IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VONKISH OMEGA GOLDEN, | ) | |
| Reg. No. 03703-017, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-cv-00782-RAH |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

## MEMORANDUM OPINION AND ORDER

Vonkish Omega Golden, a federal inmate proceeding *pro se*, filed this motion to vacate, set aside or correct his sentence in in *United States v. Golden*, Case No. 2:23-cr-00127-RAH (M.D. Ala.), pursuant to 28 U.S.C. § 2255.[1] Golden contends that (1) he should not have been designated as a career offender at sentencing, (2) the Government did not honor his plea agreement, and (3) he did not get sufficient notice of the *Shepard* documents  used against him at sentencing. He asks to "have the Government honor what we agreed upon not to be designated a career offender" and to receive a sentence "by the agreed upon guidelines." (Doc. 1 at 12.)

Upon consideration of the record, and for the reasons below, Golden's motion will be denied without an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2255 Proceedings for the United States District Courts*.

### BACKGROUND

#### A.    The Underlying Offense

On June 28, 2021, Golden's vehicle was searched during a traffic stop.  In his vehicle, law enforcement found cocaine, heroin, fentanyl, and a firearm.

On April 4, 2023, Golden was indicted on four counts related to the traffic stop:  (1) possession with the intent to distribute fentanyl, (2) possession with the intent to distribute

---

[1] All citations to the underlying criminal action will be denoted as Cr. No.

heroin, (3) possession with the intent to distribute cocaine, and (4) possession of a firearm in furtherance of drug trafficking crime.

On September 6, 2023, Golden pleaded guilty to the cocaine-distribution charge pursuant to a written plea agreement with the Government. In exchange for the plea, the Government agreed to dismiss the fentanyl, heroin, and firearm counts. (Cr. Nos. 28;  46 at 13, 15.) The plea agreement also stated that the "defendant understands that the parties have no agreement regarding any sentence recommendation that the government may make or any recommendations the government may make regarding the calculation of the defendant's advisory Guidelines range." (Cr. No. 28 at 3.) As part of the plea agreement, Golden "expressly waive[d] any and all rights conferred by 18 U.S.C. § 3742 to appeal the conviction, sentence, or order of forfeiture" and "the right to attack the conviction or sentence in any post-conviction proceeding, including proceedings pursuant to 28 U.S.C. § 2255" except for ineffective assistance of counsel and prosecutorial misconduct.  (*Id*. at 8.)

At the change of plea hearing with the Magistrate Judge on September 6, 2023, Golden confirmed that he was pleading guilty while knowing that the Government was not making a sentencing recommendation (Cr. No.  46 at 15), that the sentencing judge would decide the sentencing findings (*id*. at 15), that the plea agreement contained an appeal and collateral attack waiver (*id*. at 16–17), that it would be later determined what his sentencing range and guideline sentence would be (*id*. at 18–19), and that the sentencing judge could sentence above or below the calculated guideline range (*id*.). After this colloquy, Golden pleaded guilty to the cocaine charge, which the magistrate judge found to be knowing and voluntary. (*Id*. at 14–15.)

Upon receiving the presentence report, Golden objected to the probation officer's determination that he qualified for a career offender enhancement. (Cr. No. 35 at 4–5.) Golden argued that his 2012 Florida conviction for felony battery in

violation of Fla. Stat. § 784.03 was not a "violent felony" under the enhancement. Citing *United States v. Vereen*, 920 F.3d 1300 (11th Cir. 2019), the probation officer responded that Florida Statute § 784.03 is a divisible statute, allowing the sentencing court to review *Shepard* documents to determine under which subsection of the statute Golden pleaded guilty to, and that based on Golden's *Shepard* documents, his felony battery conviction qualified as a violent felony for purposes of the career offender enhancement. (Cr. Nos. 35 at 8; 38 at 24.)

Several days before the sentencing hearing (December 1, 2023), the Government filed four *Shepard* documents in support of the career offender enhancement. (Cr. No. 37.) The documents included the information, sentence recommendation, arrest report, and probable cause affidavit from the Florida battery case. The sentence recommendation showed that Golden was initially charged with robbery without a weapon but that he later pleaded the charge down to felony battery. (Cr. No. 37-2.) The sentence recommendation also stated that "[t]he arrest report or offense report or probable cause affidavit which is a part of the court record filed with the clerk of the court is hereby incorporated by reference and agreed to by the defendant as a factual basis for this plea and/or the factual basis is as follows: On or about June 6, 2011, the Defendant, along with a co-defendant, struck the victim, Roni Carlton, without her consent, causing injury to her face and other parts of her body." (*Id*.)

Golden was sentenced on December 4, 2023. During the sentencing hearing, there was significant discussion concerning Golden's career offender designation and the Florida battery charge. (Cr. No. 45 at 3–5, 7–9.)  The Government presented the previously filed *Shepard* documents about that charge and conviction, after which Golden's counsel conceded that the information in the documents confirmed that the Florida charge was a qualifying charge for the career offender enhancement. Golden's counsel then withdrew her objection to the enhancement. (*Id*. at 3.)

Golden's total offense level was then determined to be a 29 and his criminal history category as VI, resulting in a guidelines range of 151-188 months. (*Id*. at 6.)

The undersigned then sentenced Golden to a total term of 125 months of imprisonment, which was a below-the-guideline sentence. (Cr. Nos. 41; 45 at 21.) Final judgment was imposed that same day. (Cr. No. 41.)  Golden did not file an appeal.

## GOLDEN'S § 2255 MOTION

On December 5, 2024, Golden, proceeding *pro se*, timely filed the instant motion under 28 U.S.C. § 2255. (Doc. 1.)  On March 7, 2025, the Government filed responses in opposition with accompanying exhibits. (Doc. 6.) On November 26, 2025, the Magistrate Judge directed Golden to file a reply on or before December 31, 2025. (Doc. 11.) And Golden did so on February 3, 2026. (Doc. 14.) The § 2255 motion is now ripe for consideration.

## LEGAL STANDARD

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may obtain relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

A claim of ineffective assistance of counsel is evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). An attorney is

considered constitutionally ineffective only if (1) the attorney's "performance was deficient" and (2) that "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *see also Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see Chandler*, 218 F.3d at 1315 ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."); *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) ("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."). Scrutiny of counsel's performance is highly deferential, and the reviewing court indulges a strong presumption that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314.

Under the prejudice component, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. That said, the prejudice prong does not focus only on the outcome; to establish prejudice, the petitioner must show that counsel's deficient representation rendered the results of the proceeding fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").

Unless the petitioner satisfies both prongs of the *Strickland* test, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id.* at 697; *see Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To establish ineffective assistance of appellate counsel, the petitioner must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker . . . . Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted).

## DISCUSSION

Golden contends that he "should not have been designated as a career offender" because he "was told (thru email) by U.S.P.O. that [he] wasn't a career offender" and because "[his] prior conviction Florida battery does not qualify as a 'violent felony' for career offender purpose." (Doc. 1 at 4.) Relatedly, he argues that he "didn't receive proper notice of the Shepard documents to prepare a good defence and proper challenge" because he "received the documents around December 1st 2023 which left [him] with only the weekend to go over them (alone) because [his] court date was December 4th 2023." (Doc. 1 at 7.) He further asserts that "[his] attorney made a last-minute decision to waive the objection of the career offender status because [they] received the plea colloquy after she submitted memorandum." *Id.* These claims fail for several reasons.

* * *

To the extent Golden substantively attacks his career offender designation, that claim is waived due to the appeal and collateral attack waiver provisions in Golden's plea agreement with the Government. The Eleventh Circuit has held that

"a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005). As stated by the *Williams* court, to hold otherwise would permit the movant "to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Id*.  A waiver is knowing and voluntary if (1) the court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record reveals that the defendant understood the full significance of the waiver. *Id*.

Here, the transcript of the change of plea proceeding confirms that Golden acknowledged under oath that he had read and discussed with his counsel the terms and conditions of the plea agreement before he executed it and that he understood all of the agreement's terms and conditions. The Magistrate Judge thoroughly questioned Golden about the appeal and collateral attack waiver provision. Golden confirmed that he understood the significance of the waiver, and there is nothing of record to suggest that Golden did not understand its significance.

Consequently, Golden's substantive challenge to the career offender designation is precluded by the appeal waiver and thus is not subject to collateral attack in this proceeding.

\* \* \*

Even if Golden had not waived the challenge to his career offender designation, the claim was not presented on direct appeal. To the extent Golden seeks to challenge the career offender designation through an ineffective-assistance-of-counsel claim, he still is not entitled to relief. Generally, "[an] ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice'

standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446 (2000).

Presumably, Golden asserts that he should not have been designated as a career offender because the Florida battery conviction was not a qualifying conviction. In other words, according to Golden, his attorney should not have withdrawn her objection to the career offender designation at sentencing. To succeed, this claim rests on his premise that the Florida battery conviction was not a qualifying conviction. This question was discussed at length during Golden's sentencing, and counsel concedes that the merits of this question were not favorable to Golden. Still, since Golden raises it again, it will be addressed again, as it is central to a showing of cause and prejudice. Given the record, Golden cannot meet his burden to show ineffective assistance of counsel because his counsel correctly conceded the issue at sentencing.

The career offender provisions of the sentencing guidelines, *see* U.S.S.G. § 4B1.1-.2, require enhanced sentences for certain defendants. Under U.S.S.G. § 4B1.1, a defendant is a career offender if he is (1) at least eighteen years old at the time of the instant offense, (2) the instant offense is a felony conviction that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a).

Before his sentencing, Golden's counsel raised the issue of whether Golden's 2012 Florida felony battery conviction qualified as a career offender conviction. In determining whether a prior conviction qualifies as a violent felony under the career offender guideline, courts generally apply a categorical approach, looking "only to the fact of conviction and the statutory definition of the prior offense, instead of the actual facts underlying the defendant's prior conviction." *United States v. Robinson*, 583 F.3d 1292, 1295 (11th Cir. 2009) (quotations omitted).

When, as here, the statute of conviction lists alternative statutory phrases that define different crimes, courts apply a modified categorical approach. *Descamps v. United States*, 570 U.S. 254, 257 (2013); *Curtis Johnson v. United States*, 559 U.S. 133, 136 (2010) (stating that Fla. Stat. § 784.03 is a divisible statute subject to the modified categorical approach). The modified categorical approach allows for a limited inquiry into the facts underlying the prior conviction to determine which alternative statutory phrase formed the basis for the defendant's conviction. *Descamps*, 570 U.S. at 263. The district court may consult a limited class of documents, including the charging document, the written plea agreement, the transcript of the plea colloquy, or any "record of comparable findings of fact adopted by the defendant upon entering the plea." *Shepard v. United States*, 544 U.S. 13, 20–21 (2005). The Eleventh Circuit has concluded that a document incorporated by reference in a plea agreement—as the factual basis for the defendant's guilty plea—is a "comparable finding of fact" that may be properly considered under *Shepard*. *See United States v. Gandy*, 917 F.3d 1333, 1340–42 (11th Cir. 2019).

Florida law provides that "[t]he offense of battery occurs when a person: (1) [a]ctually and intentionally touches or strikes another person against the will of the other; or (2) [i]ntentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a). A battery committed by intentionally causing bodily harm constitutes a violent felony under the career offender guideline. *See Gandy*, 917 F.3d at 1339–40 (concluding that Florida bodily-harm battery constitutes a "crime of violence" under the Guidelines); *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (stating that the definition of "crime of violence" under the guidelines is analogous to the definition of "violent felony" under the ACCA).

Here, several days before the sentencing hearing, the Government filed four *Shepard* documents and provided notice to Golden and the sentencing court of the Government's intent to rely on those documents in support of the career offender

9

enhancement at the sentencing hearing. The documents included the information, the sentence recommendation, the arrest report, and the probable cause affidavit, and showed that on or about June 6, 2011, Golden, along with a co-defendant, struck the victim, causing injury to her face and other parts of her body. The sentence recommendation showed that Golden was initially charged with robbery without a weapon and pleaded the case down to the lesser included offense of felony battery. Those documents showed that Golden was convicted of bodily-harm battery, which is a qualifying crime of violence conviction. *Gandy*, 917 F.3d at 1339. Since the Florida battery conviction was a qualifying conviction, the career offender enhancement was applicable and appropriate, and therefore Golden's counsel was not ineffective in withdrawing her objection. And it did not matter when Golden was provided the *Shepard* documents, as Golden has failed to demonstrate that the documents are inaccurate or that further documentation shows that the Florida battery conviction was not a qualifying conviction.

This is not the only reason that Golden's claim lacks merit. For any ineffective assistance of counsel claim, Golden also must show prejudice. That is, he must show that but for his legal counsel's errors, there was a reasonable probability that the outcome of the proceeding would have been different. *Osley v. United States*, 51 F.3d 1214, 1222 (11th Cir. 2014). Golden must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691–92. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 694.

Even if assuming Golden's objection to the career offender enhancement should not have been withdrawn, Golden cannot show prejudice because, at the sentencing during the discussion of the *Shepard* documents, the sentencing court

stated that, even had Golden's counsel advanced the career offender objection, the court still would have overruled it. And given the appeal waiver in the plea agreement, that ruling could not be appealed. Thus, Golden cannot show that counsel's withdrawal of the objection would have changed the outcome.

* * *

To the extent he raises it, Golden also is not entitled to relief based on the assertion that his defense counsel had promised or guaranteed a non-career offender sentence. An erroneous estimation of the guidelines does not entitle Golden to relief, as "[a]n erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance." *Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981).[2] Further, a defendant's reliance on his attorney's erroneous prediction of a more lenient sentence is not enough to render a guilty plea involuntary. *See United States v. Pease*, 240 F.3d 938, 940–41 (11th Cir. 2001) (rejecting argument by defendant who received an enhanced sentence as a career offender that his plea was not knowing and voluntary because the sentencing court advised him that he faced a statutory maximum of life and despite counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years).

When Golden executed the plea agreement and during the colloquy with the magistrate judge during his change of plea hearing, Golden was informed and therefore was aware of the possible penalties upon a conviction. He was also informed and therefore was aware that the sentencing court could sentence him lower or higher than what he anticipated. With this knowledge, Golden moved

---

[2] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

forward with his guilty plea, which the magistrate judge found to be knowing and voluntary. *See Cruz v. United States*, 188 F.App'x 908, 914 (11th Cir. 2006) (finding no ineffective assistance where movant claimed that counsel coerced her into pleading guilty based on misrepresented facts about the case and sentencing because, *inter alia*, "[t]he court . . . explained to her the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else.") (unpublished). Golden cannot now complain that the ultimate sentence he received was defective or contrary to what was provided to him or said to him before he was sentenced.

* * *

Golden contends the Government did not honor the plea agreement. Although Golden does not say exactly how the Government did not honor the plea agreement, presumably Golden speaks to the career offender enhancement. This claim is also due to be rejected.

A plea agreement is a contract that must be honored by the Government. *See Santobello v. New York*, 404 U.S. 257, 262 (1971). The Supreme Court stated in *Santobello* that "when a plea rests in any significant degree on a promise or agreement of a prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. "When a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea." *Id*. at 268 (Marshall, J. concurring in part and dissenting in part). Accordingly, the Government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty. *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996).

In determining whether the terms of a plea agreement have been violated, the Court must determine whether the Government's conduct is consistent with the parties' reasonable understanding of the agreement at the time that the defendant

entered his plea. *United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992). The Government's argument at sentencing may breach the promises contained in a plea agreement when the Government's statements regarding the presentence report are inconsistent with the plea agreement or when the Government advocates a sentence greater than that indicated in the plea agreement. *See Taylor*, 77 F.3d at 370 ("Advocacy of a position requiring a greater sentence is flatly inconsistent with recommendation of a lesser sentence."). The defendant has the burden of proving facts showing a breach of a plea agreement, and he must make that showing by a preponderance of the evidence. *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017); *United States v. Garcia-Bonilla*, 11 F.3d 45, 46 (5th Cir. 1993). If, after construing the agreement, the court finds that the movant has satisfied his burden of showing a breach, it may then fashion a remedy, including specific performance of the agreement or withdrawal of the plea. *See Santobello*, 404 U.S. at 263 (relief may include specific performance or withdrawal of plea); *United States v. Nelson*, 837 F.2d 1519, 1521–22 (11th Cir. 1988) (same).

Golden maintains that the Government promised him a non-career offender sentence. He claims there were conversations between his counsel and the probation officer before the plea agreement had been executed and the presentence report prepared that indicate that both defense counsel and the Government believed that Golden did not qualify as a career offender. Assuming these discussions actually occurred, they occurred before the probation officer fully investigated Golden's criminal history, before the plea agreement was negotiated, drafted and executed, before the plea colloquy with the magistrate judge during which the terms of the plea agreement were discussed and that the sentencing judge could sentence higher or lower than the guidelines, and before the presentence report had been prepared by the probation officer. The discussion between counsel cannot be deemed as binding promises or assurances to Golden since they were merely informal conversations

about potential plea options and sentence outcomes.

And further, Golden confirmed to the magistrate judge during his change of plea proceeding that he understood all the terms of the plea agreement, which included the provision that the agreement was the entire agreement and understanding between him and the Government and that there were no other agreements, promises, representations or understandings. And particular to the current issue, the plea agreement did not mention the career offender enhancement, nor did it preclude the Government from advocating for it. To the contrary, Golden expressly agreed "that the parties have no agreement regarding any sentence recommendation that the government may make or any recommendations the government may make regarding the calculation of the defendant's advisory Guidelines range."

In short, the record belies Golden's claim that the Government breached the terms of the plea agreement in advocating for the career offender enhancement. The agreement contains no promise of a specific sentence, nor does it mention the applicability or inapplicability of the career offender enhancement or the treatment of any particular previous criminal conviction. To the contrary, the plea agreement explicitly provided that the Government could inform the sentencing court of facts relevant to sentencing, including information pertaining to Golden's criminal background. Golden has shown no breach of the plea agreement, and therefore this claim lacks merits.

* * *

Golden is not entitled to an evidentiary hearing because he has not alleged specific facts that, if true, would entitle him to habeas relief. *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 763 (11th Cir. 2010) ("Having alleged no specific facts that, if true, would entitle him to federal habeas relief, [Petitioner] is not entitled to an evidentiary hearing."); *see also Rosin v. United States*, 786 F.3d 873, 878 (11th

Cir. 2015) ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims . . . are grounded upon generalizations that are unsupported by the record evidence.") (citations omitted); *Killen v. United States*, No. 21-10888-E, 2021 WL 7159181, at *5 (11th Cir. Sept. 8, 2021) ("Conclusory claims, unsupported by facts or argument, cannot entitle a movant to § 2255 relief.") (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)).

## CONCLUSION

For these reasons, it is **ORDERED** and **ADJUDGED** that Petitioner Vonkish Omega Golden's 28 U.S.C. § 2255 motion is **DENIED** without an evidentiary hearing. This case is therefore **DISMISSED** with prejudice.

**DONE** on this the 4th day of February 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE